THE ATTORNEY GENERAL and others *vs.* STEWARD & TAYLOR.

1. Any trade or business, however lawful in itself, which, from the place or manner in which it is carried on, materially injures the property of others, or affects their health, or renders the enjoyment of life physically uncomfortable, is a nuisance which it is the duty of this court to restrain.

2. A preliminary injunction will not be granted in behalf of the owners of building lots held for sale, to restrain the erection near them of a slaughter-house, where it is not alleged that any one intends to erect any

buildings upon them. Whether the erection of a slaughter-house or other nuisance so near such lots as to retard or injure their sale is an injury for which the law will give redress before buildings are erected, is a question proper to be determined at law, and this court will not interfere by preliminary injunction until the question is so determined.

3. An injunction will not be granted to restrain the erection of a slaughter-house and place for keeping hogs, where, by the answer and affidavits, it appears the defendants intend to carry on the business so as not to be a nuisance. If it should be carried on in such manner as that it becomes a nuisance, it will then be enjoined.

4. No one has the right to pollute or corrupt the waters of a creek, or, if they are already partially polluted, to render them more so; all whose lands border on a stream have the right to have its waters come to them pure and unpolluted.

5. If the intended use of a slaughter-house about to be erected will, by the discharge of the blood of slaughtered animals into a creek, corrupt and pollute the stream for most of the purposes for which it may be used by the owners of lands which border on it below, and so affect it as to make its waters offensive to houses in the neighborhood, an injunction will be granted to prohibit the blood from being discharged into the stream.

---

An order was granted that the defendants show cause why an injunction should not issue to restrain them from erecting in the city of Trenton, buildings intended to be used as a slaughter-house, a pork packing-house, and pens for keeping cattle and hogs. The attorney-general joined with the other complainants, on behalf of the state, because he alleges that the erections will be a nuisance to the Normal and Model Schools and the boarding-house attached to them, all which are owned by the state. The other complainants own land, and most of them reside in houses owned by them in the vicinity of the proposed erection, which, it is alleged, will be injured by the proposed buildings.

The argument was had on the bill, and answer of the defendants, and the affidavits annexed to them, and affidavits on part of the complainants, in reply to the answer.

*Mr. Gilchrist,* Attorney-General, for the state.

*Mr. J. Wilson,* for the other complainants.

*Mr. Kingman* and *Mr. Richey,* for defendants.

THE CHANCELLOR.

Any trade or business, however lawful, which, from the place or manner in which it is carried on, materially injures the property of others, or affects their health, or renders the enjoyment of life physically uncomfortable, is a nuisance, which it is the duty of this court to restrain. *Ross* v. *Butler*, 4 *C. E. Green* 294.

There are certain things and certain trades which are considered as nuisances of themselves: as a slaughter-house in a thickly populated town, a pig-sty near a dwelling-house, and, perhaps, to these may be added a fat melting or rendering-house, when carried on extensively in a populous neighborhood, or near inhabited dwellings. But these are not nuisances simply because erected within the limits of an incorporated city; and when erected as these buildings are proposed to be, seven hundred feet distant from the nearest dwelling-house owned by any of the complainants, whether they will be a nuisance depends much upon the extent to which the business is carried on and the manner in which it is conducted. The complainants, C. S. Olden and W. G. Cook, own lands for building lots within two hundred and fifty feet. But no immediate irreparable injury will be done to these by the erection of the buildings or commencement of the business, as no one lives there, and it is not alleged that any one intends to erect any buildings upon these lots. Whether the erection of a slaughter house or other nuisance so near lots held for sale as building lots as to retard or injure the sale is an injury for which the law will give redress before buildings are erected, is a question proper to be determined at law, and the injury is not such as calls upon this court to interfere until the question is so determined, at least not by preliminary injunction. I have no doubt but that a slaughter-house or other unquestionable nuisance erected so near lots held for sale as building lots would very much affect the sale of them, and therefore would, in fact, be

an injury to the owner; but whether it is an injury which the law would redress, must be settled by the courts of law.

The injuries which it is contended will result from the business proposed to be carried on are, first, that the air in the vicinity will be corrupted by the foul odors from the slaughter-house; second, that the waters of the Assanpink creek, which runs along the defendants' premises, and along or near the premises of the complainants below the proposed erection, will be corrupted by the blood and offal that will be permitted to run into it; and, third, that keeping cattle and hogs confined in pens will produce a stench that will extend to the complainants' premises.

The defendants, by their answer, deny that they intend to carry on the slaughtering of cattle or sheep on the premises, but admit that they intend to bring live hogs, and have them slaughtered there, to the extent of five hundred per week. They deny that they intend to keep cattle or hogs upon the premises, except hogs brought there to be slaughtered, which they will keep in clean pens, and in a clean condition, only for a few hours before they are slaughtered. They state that they intend to erect a three-story building, of which the two lower stories (both under ground) will be used for an ice-house, and keeping and packing pork, and storing butter and fruits. That the third story will be used for slaughtering hogs, which will be done in such way that no stench or smell whatever will arise from it, perceptible outside of the building. That the blood will be sold for manure, and removed from the premises daily; or, if that is impracticable, it will be washed, by seven hundred times its own bulk of water, into the creek, where it will not be perceptible. That they will carry on the fat melting, or rendering business, in such way that it will not cause any perceptible odor, and, as the defendants, Steward and Taylor, have each carried it on for many years in the thickly settled part of the city, without its being perceived by any one not in the building.

I am satisfied that it·is possible to conduct the business of slaughtering hogs on the scale intended by the defendants,

in such manner as not to be a nuisance to dwellings within five hundred feet; and the plan of constructing, keeping, and cleansing the floors used for the purpose set forth in the answer, seems to me to be such as may effect that purpose; at least, I cannot say that it will not. The proposed manner of disposing of the blood, either by removing it forthwith from the premises in vessels, for manure, or by washing it off in seven hundred times its own bulk of water, seems calculated to prevent any noisome smell arising from that. The rendering of the fat or lard, so far as respects the parts of the animals which have been formerly rendered into lard by some of the defendants, can, no doubt, easily be conducted without being offensive. The boiling of the residue of the intestines and other offal may be more difficult, but, I have no doubt can be so conducted as not to annoy persons occupying the premises of the complainants. If the defendants go on with this business, which is not necessarily a nuisance, in such manner as that it becomes a nuisance, it may then be enjoined. The defendants have no right to pollute or corrupt the waters of the creek, or, if they are already partially polluted, to render them more so. All whose lands border on a stream have the right to have its waters come to them pure and unpolluted. *Holsman* v. *Boiling Spring Co.*, 1 *McCarter* 335.

If the defendants discharge the blood from one hundred slaughtered hogs daily into this creek, it cannot be otherwise than that it must corrupt and pollute the stream for most of the purposes for which it may be used by those whose lands border on it below, and I think it may so affect the stream as to make its waters offensive to houses in the neighborhood. The rule laid down by those who have scientifically examined into the subject, that the blood of a healthy man is about one tenth of his weight, if applicable to swine, and it probably approximates the truth as regards them, would make a much larger quantity pass into the stream than is stated by the defendants. I think that an injunction should issue, prohibiting them from permitting the blood of

hogs, or other animals slaughtered on their premises, from flowing into the Assanpink. The blood contained in the water used to wash the pork before packing it, and to cleanse the floor of the slaughter house, is comparatively so small that I cannot determine, and I do not believe that it will affect the waters of the creek. Keeping live hogs in pens, in a city, is generally a nuisance. At the distance which this place is from any dwelling, I do not think that a few hogs, or even thirty or forty, cleanly kept in well constructed pens, would be a nuisance. But I very much doubt whether five hundred, or one hundred hogs, could be kept for any length of time on these premises, in any manner, without being offensive at the premises of some of these complainants. The defendants state their intention to be to keep a limited number for *a few hours* previous to their being slaughtered. A few hours is an indefinite term, but it may, and would naturally be taken to mean three or four, and I have no evidence to show that such keeping would annoy the complainants, or any of them.

From these views, I must direct that for the present no injunction shall issue against the defendants, except to restrain them from permitting the blood of the hogs slaughtered on their premises to flow into the Assanpink, or to pollute the waters of that creek, and that the complainants are entitled to an injunction for that purpose.